UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEFFRY SCHLOSSER,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     No. 3:19-cv-1380 (SRU) |
| CHANNON ELZEA, et al.,<br>    Defendants. | :<br>:<br>: |

## **INITIAL REVIEW ORDER**

On September 5, 2019, Jeffrey Schlosser, who was then a pretrial detainee confined at the Hartford Correctional Center in Connecticut, brought a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Probation Officer Channon Elzea, Probation Officer Miriam Mendoza, Attorney Charity Hemingway, and Connecticut Superior Court Judge Kathleen E. McNamara.[1] Compl., Doc. No. 1.

On initial review, I dismissed Schlosser's claims against Elzea and Mendoza subject to amendment because he had not provided facts showing that Elzea or Mendoza acted recklessly with respect to his medical conditions while they monitored his probation.[2] Initial Review Order, Doc. No. 12 at 2.

On December 12, 2019, Schlosser filed an amended complaint against Jane Doe, Channon Elzea, Miriam Mendoza, John Doe, and Jeffrey Mehias, in their individual and official capacities, seeking damages and declaratory and injunctive relief for violation of his rights under

---

[1] On January 15, 2020, Schlosser was sentenced for violation of parole or conditional discharge. *See* Connecticut State Department of Correction, Inmate Information, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=269683 (last visited Jan. 31, 2020). The Court may "take judicial notice of relevant matters of public record." *Sanchez v. RN Debbie*, 2018 WL 5314916, at *2 n.4 (D. Conn. Oct. 26, 2018) (citing *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012)).

[2] I dismissed the claims against Attorney Hemingway because claims against public defenders are not cognizable under 42 U.S.C. § 1983; and I dismissed the claim against Judge McNamara on the basis of absolute judicial immunity. Initial Review Order, Doc. No. 12, at 3.

the Americans with Disabilities Act ("ADA") and the Eighth and Fourteenth Amendments to the United States Constitution.³  Am. Compl., Doc. No. 16.

Schlosser's amended claims are difficult to discern, but I construe his allegations as asserting violations of the ADA and the Eighth and Fourteenth Amendments based on defendants' failure to provide him access to appropriate mental health programs and to ensure his provision of adequate mental health care while he was on probation.  He also appears to allege a constitutional claim based on having to reside at a shelter where he was exposed to bedbugs.  For the following reasons, I conclude that Schlosser's ADA and Fourteenth Amendment claims are not plausible and should be dismissed.

**I. Standard of Review**

Under 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555–56 (2007). Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*,

---

³ Schlosser appears in places also to assert a violation of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").  However, there is no private right of action under HIPAA. *Mathie v. Womack*, 2015 WL 419802, at *2 (E.D.N.Y. Jan. 29, 2015) (citing *Warren Pearl Constr. Corp., et al. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009)).  Thus, to the extent that Schlosser asserts a claim based on a violation of HIPAA, it is dismissed.

2

470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

**II.      Allegations**

Schlosser alleges that probationers with serious mental health issues are supposed to be referred to the Department of Mental Health and Addiction Services ("DMHAS"). Am. Compl., Doc. No. 16, at 2–6.[4] Elzea and Mendoza, both Court Support Services Division ("CSSD") probation officers, were assigned as Schlosser's probation officers from 2014 to 2016 and 2017 to 2018, respectively; both Elzea and Mendoza were not licensed to evaluate probationers, and they failed to refer Schlosser to the DMHAS for evaluation and treatment as a probationer with serious mental health issues. *Id.* at 2–3.

John Doe and Jeff Mehias, CSSD probation officer supervisors, supervised Elzea and Mendoza, respectively. They also were not licensed to evaluate probationers, and they also failed to refer Schlosser to DMHAS. *Id.* at 4–5. Jane Doe, the CSSD regional supervisor, oversaw Mehias and Mendoza. *Id.* at 6. After Doe was informed of Mehias and Mendoza's failure to refer Schlosser to DMHAS, Doe stated that Mehias and Mendoza had not done anything wrong. *Id.* Doe also permitted Mehias and Mendoza to violate a court-ordered special condition of Schlosser's probation that required a "licensed" officer to evaluate him. *Id.*

In 2014, Elzea was aware of Schlosser's anxiety after he was discharged from Osborn Correctional Center. *Id.* at 8. Elzea sent Schlosser to Catholic Charities where he saw a therapist and psychologist, and Schlosser received a diagnosis of PTSD and agoraphobia. *Id.* at 9. Elzea was given a copy of that diagnosis. *Id.* During his first year of probation, Schlosser was prescribed Ativan by Catholic Charities. *Id.* Catholic Charities had to keep increasing

---

[4] The pages of Schlosser's amended complaint were filed out of order. Page references within this initial review order correspond to Schlosser's page numbers.

Schlosser's medication dosage. *Id.* In the summer of 2016, Schlosser's anxiety "started overriding" his medication; he ran out of Ativan for seven days, experienced bad withdrawals, and used other substances to deal with the withdrawals. *Id.* at 9–10. Elzea referred Schlosser to a methadone clinic. *Id.* at 10. The next month, Schlosser experienced withdrawals again. *Id.*

Schlosser went to a walk-in clinic at MCCA[5] looking for in-patient treatment, but a nurse indicated that Schlosser could be helped through out-patient tapering treatment and that Schlosser could receive a referral to a mental health program. *Id.* at 10–11. On a telephone call, Elzea later told the nurse that she wanted Schlosser to be in-patient rather than out-patient and thereby denied Schlosser immediate help. *Id.* at 11. Schlosser later went to Griffin Hospital ("Griffin") where he was told that Griffin could help Schlosser in their out-patient program if Schlosser discontinued Ativan. *Id.* Schlosser tapered off Ativan, attended Griffin's program for one day, and then violated his probation. *Id.* Before Schlosser turned himself in, Elzea asked him why he had not told her he was at Griffin. *Id.* Schlosser explains, though, that he had given Elzea all his paperwork, but she never read it. *Id.* Schlosser pleaded guilty to the violation of his probation.[6] *Id.*

Upon discharge (apparently from Bridgeport Correctional Center) on October 20, 2017, Schlosser again never received a mental health probation officer, which had been a special condition ordered by the court as part of his plea agreement. *Id.* at 6, 11–12, 19. Prior to Schlosser's discharge, he requested to go to the Yale-New Haven Mental Health Program, but Schlosser was told he had to report to Manchester and that he would not get a mental health probation officer. *Id.*

---

[5] Although not made clear in Schlosser's complaint, "MCCA" appears to refer to a rehabilitation center in Danbury. *See* Home Page, https://mccaonline.com/ (last visited Jan. 31, 2020).

[6] Schlosser's amended complaint appears to indicate that he was found guilty of the probation violation on October 30, 2016. *See* Am. Compl., Doc. No. 16, at 11.

4

After discharge, Schlosser slept in a "trap house," a fountain, and a shelter. *Id.* at 13. Schlosser later met with Mendoza and made her aware of his mental health problems. *Id.* Mendoza told Schlosser that the shelter would be Schlosser's address. *Id.* At the shelter, Schlosser was badly bitten by bedbugs, and he went to "Yale and got decontaminated." *Id.* Mehias and Mendoza told Schlosser that he had to go back to the shelter. *Id.*

Subsequently, Mendoza sent Schlosser to Grant Street Partnership in New Haven for mental health services, but Grant Street could not provide Schlosser with the medication he needed. *Id.* Schlosser told Mendoza that, but Mendoza responded that Schlosser was "pill searching," that he "didn't need it," and that he "was trying to get high." *Id.* at 14. Mendoza and Mehias also told Schlosser he could not go back to Griffin's group program. *Id.* at 14. Schlosser discontinued his program at Grant Street and later completed some treatment at Yale Behavior Health. *Id.*

Mendoza got Schlosser "kicked out" of an anxiety group that met on Fridays because of "having [Schlosser] in her office too long and not giving [Schlosser] enough time to arrive there." *Id.* Mendoza then "mandated and picked a different group" for him. *Id.* Schlosser had been told that he could not change his groups without her approval. *Id.* at 13. Mehias required that Schlosser attend a relapse prevention program. *Id.* at 14.

In 2018, Schlosser was diagnosed with PTSD and amnesia; he started seeing a specialist at Gaylord Hospital for cognitive and memory issues; and he participated in a Ketamine study for veterans with PTSD at the Veterans Administration ("VA"). *Id.* at 15. Mendoza accused Schlosser of trying to get high, but Schlosser had had numerous blood tests and urine analyses to ensure he was not "using." *Id.*

After Schlosser completed the VA program, Mendoza told Schlosser he could attend drug programs at Catholic Charities or MCCA. *Id.* at 15. Schlosser was prevented from participating

5

in groups at the APT Foundation[7] for the false reason that the APT Foundation treats babies. *Id.* at 16. Mendoza violated "provider/client laws of evaluation" and mandated that Schlosser go to MCCA. *Id.* The intake staff at MCCA told Schlosser that he had alcohol problems; however, Schlosser had not tested positive for alcohol since 2012. *Id.* Schlosser was excluded from getting the help he needed. *Id.* Jane Doe and Mehias were aware of Mendoza's wrongdoing. *Id.*

**III.  Discussion**

Schlosser alleges that if he had been sent to DMHAS, he would not have been placed on the wrong medication, suffered withdrawals, and violated his probation. *Id.* at 7, 17. He asserts that individuals with mental health issues abuse their medication when the medication is no longer working; that he should not have been treated like a drug addict; and that the probation officers should not have been allowed to pick his treatment groups. *Id.* at 7. In sum, Schlosser alleges violations of the ADA, the Eighth Amendment, and the Fourteenth Amendment.

   A.  ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II of the ADA, a plaintiff must show "(1) that he is a 'qualified individual' with a disability;[8] (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his

---

[7] The APT Foundation is a rehabilitation organization. *See* Home Page, https://aptfoundation.org/ (last visited Jan. 31, 2020).
[8] The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). One is also considered "disabled" under the ADA if one is "regarded as having such an impairment." *Id.* at § 12102(1)(C).

6

disability."[9] *Hargrave v. Vermont,* 340 F.3d 27, 34–35 (2d Cir. 2003) (internal citation omitted). A plaintiff seeking money damages under Title II of the ADA must allege that his mistreatment was motivated by either discriminatory animus or ill will due to disability. *See Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 2001); *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010).

As an initial matter, Schlosser may not maintain an ADA claim against a state actor in his or her individual capacity. *See Garcia*, 280 F.3d at 107. Accordingly, the ADA claims asserted against the defendants in their individual capacities are dismissed as lacking an arguable legal basis. *See* 28 U.S.C. § 1915A(b)(1). Schlosser may, however, bring a Title II ADA claim against a state or its agent in its official capacity for injunctive relief. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). Under certain circumstances, an inmate may assert a Title II ADA claim for monetary damages against a state or an individual in his or her official capacity. *See United States v. Georgia*, 546 U.S. 151, 159 (2006) ("[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity."). Thus, I consider Schlosser's ADA claims for monetary damages and injunctive relief against the defendants in their official capacities.

Schlosser asserts that the defendants' failure to refer him to DMHAS—which they should have done because he was a probation client with serious mental health issues—violated Title II

---

[9] "A qualified individual can base a discrimination claim on one of three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation." *Pierce v. Semple*, 2018 WL 6173719, at *4 (D. Conn. Nov. 26, 2018) (quoting *Fulton v. Goord*, 591 F.2d 37, 43 (2d Cir. 2009)). Here, Schlosser's ADA allegations appear most closely aligned with the theory of failure to provide reasonable accommodation. Under any theory, though, Schlosser's ADA claims fail because his allegations do not suggest that he was denied access to a public program on the basis of his qualifying disability.

of the ADA. Schlosser arguably has satisfied the first requirement for a claim under Title II of the ADA: that he is a "qualified individual" with a disability. For one, Schlosser has alleged that he has severe mental health issues and diagnoses and that Mendoza treated him like a drug addict.[10] It is possible that Schlosser's mental health issues and being regarded as being a drug addict may "substantially limit[] one or more major life activities." 42 U.S.C. § 12102(1)(A). However, I need not engage in that analysis because, even if Schlosser has established that he is a qualified individual under the ADA, Schlosser does not meet the remaining prongs of the ADA standard. Under the second and third elements of a Title II ADA analysis, the court must consider whether any defendant has denied Schlosser the opportunity to participate in or benefit from public services, programs, or activities, or has otherwise discriminated against him," by reason of his disability rather than a legitimate nondiscriminatory reason. *See Torrez v. Semple*, 2018 WL 2303018, at *8 (D. Conn. May 21, 2018) (discussing second and third elements).[11]

Although Schlosser alleges that he informed Elzea and Mendoza about his mental health issues—and suggests that Mendoza viewed him as a drug addict[12]—Schlosser has not alleged any facts suggesting he was the subject of disability discrimination in violation of Title II of the ADA. Schlosser's allegations indicate that defendants' referrals to various programs failed to provide Schlosser with the mental health treatment that Schlosser maintains would have been most effective for him. However, "[c]ourts routinely dismiss ADA suits by disabled inmates that

---

[10] Drug addiction qualifies as a disability under the ADA. *See Valley Housing LP v. City of Derby*, 802 F. Supp. 2d 359, 384 (D. Conn. 2011) (citing *Reg'l Econ. Cmty. Action Program, Inc. v. City of Middletown*, 294 F.3d 35, 46 (2d Cir. 2002)).

[11] With respect to a reasonable accommodation claim, "the relevant inquiry asks not whether the benefits available to persons with disabilities and to others are actually equal, but whether those with disabilities are as a practical matter able to access benefits to which they are legally entitled." *Henrietta D. v. Bloomberg*, 331 F.3d 261, 273 (2d Cir. 2003).

[12] *See* Am. Compl., Doc. No. 16, at 7, 9, 13, 14, 19.

allege inadequate medical treatment, but do not allege that the inmate was treated differently because of his disability." *Elbert*, 751 F. Supp. 2d at 595. Schlosser alleges that he was not placed in his preferred treatment program but he fails to plausibly allege that defendants denied him the opportunity to participate in public programs by reason of his mental health disability or perceived drug addiction. *See Webb v. Arnone*, 2018 WL 3651333, at *8 (D. Conn. Aug. 1, 2018) (dismissing ADA claim where inmate failed to assert "defendants discriminated against him or treated him differently because of his arthritic condition"); *Nails v. Laplante*, 596 F. Supp. 2d 475, 481–82 (D. Conn. 2009) (dismissing inmate's ADA claim for monetary damages where plaintiff failed to provide non-conclusory allegations of discriminatory animus or ill will based on his disability and had identified "no program he could not participate in or any service that was denied as a result of his disability"); *see also Atkins v. Cnty. of Orange*, 251 F. Supp. 2d 1225, 1232 (S.D.N.Y. 2003) ("With no allegation of disparate treatment, no claim for discrimination under the ADA . . . lies."). Absent allegations suggesting that defendants acted with discriminatory animus or excluded Schlosser from participating in a public program by reason of his disability, Schlosser's allegations fail to establish a cognizable violation of the ADA. Thus, I dismiss Schlosser's ADA claims under 28 U.S.C. § 1915A(b)(1).

B. <u>Eighth Amendment</u>

In his second claim, Schlosser asserts a claim of deliberate indifference based on the defendants' alleged awareness of his psychological diagnoses and symptoms and their failure to send Schlosser to DMHAS "from the beginning" after his discharge. Am. Compl., Doc. No. 16, at 16–17. However, an individual who is not "in custody," including a probationer or parolee, cannot state an Eighth Amendment claim of deliberate indifference to a serious medical need. *See, e.g.*, *Stovall v. Wilkins*, 2016 WL 5478509, at *3 (S.D.N.Y. Sept. 29, 2016); *Ciccone v. Ryan*, 2015 WL 4739981, at *3 (S.D.N.Y. Aug. 7, 2015) (noting that the claims brought by the

plaintiff, who was "on parole, not incarcerated or institutionalized," when the claims arose, were "appropriately analyzed under the Fourteenth Amendment, not the Eighth"). Thus, Schlosser's claims of Eighth Amendment deliberate indifference are not plausible, and I dismiss them under 28 U.S.C. § 1915A(b)(1).

    C.    <u>Fourteenth Amendment</u>

I construe Schlosser's complaint as alleging the defendants violated his Fourteenth Amendment due process rights by acting with deliberate indifference to his mental health needs by (1) failing to send Schlosser to the appropriate treatment programs and centers, and (2) failing to ensure that Schlosser was provided with mental health probation officers as required by the court's special condition to his plea agreement. I also construe Schlosser's complaint as asserting a claim that Mendoza and Mehias acted with deliberate indifference to his safety by requiring that he live in a shelter with bedbugs. *See* Am. Compl., Doc. No. 16, at 18–19.

To state a plausible Fourteenth Amendment claim that state officials acted with deliberate indifference to his medical needs, Schlosser must allege facts showing

> that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the . . . detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

*Taylor v. City of New York*, 2018 WL 1737626, at *12 (S.D.N.Y. Mar. 27, 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)); *see also Garcia v. University of Conn. Health Care Ctr.*, 2018 WL 5830840, at *9 (D. Conn. Nov. 7, 2018). Thus, to state a plausible Fourteenth Amendment claim that the defendants acted with deliberate indifference to his medical needs, Schlosser must allege that the defendants acted "intentionally" or "recklessly."

The standard is even more exacting when a plaintiff asserts an affirmative right to governmental aid. "[T]he Due Process Clauses generally confer no affirmative right to governmental aid." *DeShaney v. Winnebago Cty. Dep't of Soc. Serv.,* 489 U.S. 189, 196 (1989).

There are two exceptions to the applicable general principal: the "special relationship" exception and the "state created danger" exception. *See Matican v. City of New York*, 524 F.3d 151, 155 (2d Cir. 2008). Only the "special relationship" exception is relevant here. As the *DeShaney* Court recognized, the state has an affirmative duty with respect to an individual "when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs." *DeShaney,* 489 U.S. at 200. "[I]nvoluntary custody" is the "linchpin of any special relationship." *Matican*, 524 F.3d at 156. Although it is not entirely clear whether *DeShaney* and *Matican* apply to probationers, courts in the Second Circuit have held that a parolee is in the state's "legal custody"; however, "because the limitations imposed by the state [on a parolee] are minimal, so too are the duties it assumes." *Jacobs v. Ramirez*, 400 F.3d 105, 105–07 (2d Cir. 2005). I need not consider whether *Jacobs* applies to probationers because even if the defendants did owe Schlosser a limited, affirmative duty under the Due Process Clause, they did not violate it. "[T]o succeed on a Fourteenth Amendment claim under the special relationship exception, a plaintiff must show that the [defendant's] behavior was so egregious, so outrageous, that it may fairly be said to shock the conscience." *Davis v. McCleary*, 2017 WL 2266856, at *4 (E.D.N.Y. May 23, 2017) (quoting *Matican*, 524 F.3d at 155) (internal quotation marks and citation omitted); *see also Ciccone*, 2015 WL 4739981, at *5.

I dismiss Schlosser's claims for deliberate indifference under the Fourteenth Amendment because Schlosser's allegations establish that the defendants acted, at most, negligently. First, Schlosser alleges that the defendants referred him to programs that failed to address adequately his mental health needs. The defendants' actions were not reckless and they do not "shock the conscience." For instance, by Schlosser's own account, Elzea repeatedly referred Schlosser to organizations that could help Schlosser. In 2014 Elzea sent Schlosser to Catholic Charities,

11

where Schlosser saw a therapist and a psychologist. Am. Compl., Doc. No. 16, at 9. In the summer of 2016, when Schlosser began withdrawing from Ativan, Elzea referred Schlosser to a methadone clinic. *Id.* at 10. In 2017 and 2018, Mendoza sent Schlosser to Grant Street Partnership in New Haven for mental health services and told Schlosser he could attend drug programs at Catholic Charities or MCCA. *Id.* at 15. Schlosser's sharpest allegations—that Mendoza accused Schlosser of "pill searching" and "trying to get high," *id.* at 14—do not themselves shock the conscience. That conclusion is especially clear where—as here—Schlosser's own complaint details the substantial aid that the defendants plainly provided Schlosser. Thus, at most, the defendants were negligent. But negligence is not sufficient to sustain Schlosser's Fourteenth Amendment claim.

With respect to Schlosser's allegations that defendants did not comply with a court order to provide him with a mental health probation officer, Schlosser has not adequately alleged the specific requirements of this alleged court order so that I might determine whether a violation of his constitutional rights occurred. Furthermore, because Schlosser has failed to allege that any of the named defendants were personally involved in assigning to Schlosser probation officers who were not licensed mental health probation officers, Schlosser has failed to establish a plausible constitutional violation against them. *See Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) ("[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").

I also dismiss Schlosser's Fourteenth Amendment claim based on the theory that Schlosser was required to stay in an inadequate or unsafe shelter. Even construing Schlosser's allegations to state that Mehias and Mendoza effectively compelled Schlosser to stay at the bedbug-infested shelter, those allegations do not state a plausible claim of deliberate indifference to an excessive risk to Schlosser's health or safety. Generally, in similar contexts, courts have

declined to find a constitutional violation based on bedbug exposure. *See, e.g.*, *Ellis v. Bryant*, 2019 WL 5460697, at *5 (W.D. Okla. Oct. 7, 2019), *report and recommendation adopted*, 2019 WL 5457819 (W.D. Okla. Oct. 24, 2019) (finding bedbug bites insufficient grounds to support an Eighth Amendment claim); *Slavish v. City of Wilkes-Barre*, 2018 WL 5289500, at *8 (M.D. Pa. June 14, 2018) (noting that bed bug infestation did not amount to a state created danger under Fourteenth Amendment). Thus, I dismiss Schlosser's Fourteenth Amendment claim insofar as it relies on his being forced to live in a place with bed bugs.

D. Declaratory and Injunctive Relief

Because I have dismissed Schlosser's underlying claims on the merits, I need not consider whether he is entitled to declaratory[13] and injunctive[14] relief against the defendants in their official capacities. *See Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010) (requests for injunctive relief are remedies and are dismissed with the underlying claim).

E. Appointment of Counsel

Schlosser has filed a motion for appointment of counsel. Mot. to Appoint Counsel, Doc. No. 3. A court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). However, civil litigants do not have a constitutional right to the appointment of counsel. *See Leftridge v. Connecticut State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011) ("A party has no constitutionally guaranteed right to the assistance of counsel in a civil case.") (internal citation omitted). "District courts exercise substantial discretion in deciding whether to appoint counsel . . . ." *Ferrelli v. River Manor Health Care*

---

[13] In his request for "declaratory relief," Schlosser seeks the sum of ten million dollars for the alleged violations of his rights. Am. Compl., Doc. No. 16 at 20.

[14] Schlosser seeks an order for "probation to review its procedure" and send individuals with mental health issues to DMHAS for case management. *Id.*

*Ctr.*, 323 F.3d 196, 203 (2d Cir. 2003). The Second Circuit has cautioned against the "routine appointment of counsel." *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173–74 (2d Cir. 1989).

In considering whether to appoint *pro bono* counsel for an indigent litigant, a district court must "first determine whether the indigent's position seems likely to be of substance." *See Hodge* v. *Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *see also Cooper*, 877 F.2d at 171 ("[C]ounsel is often unwarranted where the [litigant's] chances of success are extremely slim."). If an indigent litigant's claims are sufficiently meritorious, I should then consider other factors bearing on the need for appointment of counsel, including the movant's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented, the movant's apparent ability to present the case, and the complexity of the legal issues involved. *See Hodge*, 802 F.2d at 61–62.

I have determined that Schlosser's claims are not plausible after affording him one opportunity to amend his complaint. Thus, Schlosser's motion for appointment of counsel is denied.

## ORDERS

For the foregoing reasons, Schlosser's amended complaint has failed to state plausible claims under the ADA, Fourteenth Amendment, and Eighth Amendment. This action is DISMISSED without leave to amend. The motion for appointment of counsel, doc. no. 3, is DENIED. The clerk is instructed to enter judgment for the defendants and close this case.

It is so ordered.

Dated at Bridgeport, Connecticut this 24th day of February 2020.

/s/ Stefan R. Underhill
Stefan R. Underhill
United States District Judge